IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Thomas Richard Golden, | ) | C/A No.: 5:21-1795-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act").

Having carefully considered the parties' submissions and the applicable law, the court affirms the

Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

A.      Procedural History

On May 26, 2020, Plaintiff filed an application for DIB alleging a disability onset date of

July 5, 2018. Tr. 165–72. His claim was denied initially, Tr. 73, and upon reconsideration, Tr. 84,

and Plaintiff requested a hearing, Tr 96–97. On December 17, 2020, a hearing was held before an

Administrative Law Judge ("ALJ") and testimony was taken from Plaintiff, who was represented

by counsel, and a vocational expert ("VE"). Tr. 32–63. On January 11, 2021, the ALJ issued an

unfavorable decision finding Plaintiff was not disabled. Tr. 12–31. Plaintiff requested review of

the decision from the Appeals Council, Tr. 138–41, and the Appeals Council denied review on

April 22, 2021, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on June 15, 2021. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born on February 18, 1976, and was forty-two years old on his alleged onset date of July 5, 2018. Tr. 171. In his initial Disability Report-Adult form Plaintiff stated he earned his college degree in May 2020, and he did not attend special education classes or have vocational training. Tr. 167. He listed his past relevant work ("PRW") as Army team leader, 1998-2012, tire cutter, 2012, and chemical mixer, 2013-2014. *Id.* Plaintiff indicated the following medical conditions limited his ability to work: traumatic brain injury ("TBI"), PTSD, left knee pain, skin condition, and irritable bowel syndrome. Tr. 166. Plaintiff indicated he was 5'5" tall, weighed 255 pounds, and his conditions caused him pain or other symptoms. *Id.*

C.    Administrative Proceedings

Plaintiff appeared with counsel in Greenville, South Carolina for his administrative hearing on December 17, 2020. Tr. 33–63. Plaintiff and VE Katharine Jett appeared and testified at the hearing. *Id.*

1.   Plaintiff's Testimony

In response to questions from the ALJ, Plaintiff testified he is 44,  6'2", 255 pounds, and he lives alone. Tr. 39. Plaintiff testified he earned a B.A. degree from North Greenville University. Tr. 40. Plaintiff said he was right-handed, has a driver's license, and he drives. *Id.*  Plaintiff stated he has never been to jail, and he collected unemployment when he first got out of the Army in 2014. *Id.* Plaintiff testified the last job he had was a squad leader/infantryman in the Army. Tr. 39–40. Plaintiff stated he was in the Army for 15 years and the highest rank he achieved was E-5. Tr.

2

41.  Plaintiff was asked why he only reached the rank of E-5, and he said he did not make the promotion list. *Id.* Plaintiff stated his PTSD is a big factor as to why he cannot work, along with his TBI, his diagnosis of cluster headaches and migraines. *Id.* Plaintiff said if he can get ahead of his migraine, it will last for maybe 2 days, but if he cannot, it lasts anywhere from 3 to 4 days. *Id.* When asked how long an E-5 can stay in the Army, Plaintiff said you can remain in the Army for 14 to 15 years if you are on the promotion list. Tr. 41–42. Plaintiff stated he missed the promotion list by one point when he got out. Tr. 42. Plaintiff testified he can stand 10 minutes comfortably without taking a break, and then he sits down, or he leans more on his cane.  *Id.* Plaintiff said he can sit for about 10 minutes, and then his body starts to move, and he cannot get comfortable. *Id.* Plaintiff testified he can walk 10 minutes with a cane without taking a break, and the heaviest amount he can lift is about 15 pounds. *Id.* Plaintiff said his cane was prescribed after his physical therapy because his knees are so bad. *Id.* Plaintiff said he can bend to pick up an item, but it is stressful because he must straighten his leg and it takes him a little longer. Tr. 43. Plaintiff stated he has issues with both knees, and he assumes it is arthritis because he jumped out of planes. *Id.* Plaintiff testified he has issues with his hands occasionally, and he went to physical therapy for his right arm in 2015 or 2016. *Id.* Plaintiff said he has shoulder pain and arthritis from shooting 3 to 4 times a week for 15 years. *Id.* Plaintiff stated he has not been diagnosed with any breathing problems. Tr. 43–44. Plaintiff testified he has a cat. Tr. 44. Plaintiff said he can do meal preparation, can bathe and get dressed on his own, can cut grass on the riding lawn mower, do laundry, and go shopping. *Id.* Plaintiff testified he cannot clean around the house like he used to, and he will hire someone to clean if he has extra money because cleaning puts too much strain on his knees. *Id*. Plaintiff said he does not socialize because he cannot be around a lot of people. Tr. 45. Plaintiff said he has a cell phone but does not have a Facebook account. *Id.* Plaintiff testified

that before Covid he attended church, went out to eat twice a month, and saw his doctor for his PTSD and headaches. *Id.* Plaintiff said his medication is sometimes effective but if he does not get ahead of his headaches, he is not able to stop them. Tr. 46. Plaintiff stated he does not experience side effects from his medication, and he does not drink alcohol or take street drugs. *Id.* Plaintiff testified he stays at home most of the time, but he occasionally visits his mother because he knows it is safe. *Id.* Plaintiff said he watches television for one or two hours at night before he goes to bed. *Id.*   Plaintiff stated he is medically retired from the Army. *Id.*

In response to questions from his attorney, Plaintiff testified he gets migraines 3 or 4 times a month and during those times he goes in a dark room, without lights, and tries to sleep because he is sensitive to light. Tr. 48–49. Plaintiff explained the trauma he suffered while in the Army made him have trouble functioning and this effected his promotion. Tr. 49. Plaintiff stated  the Army made a lot of accommodations for him. *Id.* Plaintiff stated he cannot concentrate, and some smells or noises remind him of the tragedy and what he was doing. Tr.  49–50.  Plaintiff testified he has not been able to control his emotions since he was discharged because he has a lot of anger about what happened. Tr. 50.  Plaintiff explained he mostly socializes on the phone although he attended church on Wednesday and Thursday before Covid. Tr. 51. Plaintiff said he goes to service, sits by himself, and then goes home. *Id.* Plaintiff stated he watches tv two hours a day. *Id.* Plaintiff testified he does not have any social contact other than his mother, and explained he is not married, does not have children, does not really have a girlfriend, and does not belong to any groups or social clubs. Tr. 51–52. Plaintiff testified he does not sleep well at night and takes a 30–45-minute nap during the day. Tr. 52. Plaintiff said on certain days he experiences depression related to past trauma and he stays away from everyone, and it takes 2 to 3 days to come out of it. Tr. 53. Plaintiff  testified he does not like crowds, and he cannot trust people. *Id.* Plaintiff said

when he is criticized his anger builds up because he does not like being told what to do. Tr. 53–54. Plaintiff said he has flashbacks  2 to 3 times a week or more and the flashbacks are triggered by smell or sound. Tr. 54–55. Plaintiff testified he has nightmares 1 or 2 times a night  and when he wakes up, he cannot go back to sleep. Tr.  55–56.

2.  VE's Testimony

The VE testified Plaintiff's previous work, as classified by the DOT, was an infantry unit leader, DOT number 378.684-014, with a heavy exertional level, and SVP of 3. Tr. 57. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past work experience with the following limitations:

> able to lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently, stand or walk for approximately six hours per eight hour work day and sit for approximately six hours per eight hour work day with normal breaks, who can never climb ladders, ropes or scaffolds, frequently climb ramps or stairs, occasionally stoop, crouch, kneel or crawl, who is limited to no use of moving machinery and no exposure to unprotected heights and who is limited to occupations which do not involve working beneath bright flashing lights.
>
> Now, this doesn't include the normal exposure to neon lights in a working environment and whose work is limited to simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work-related decisions and with few, if any, workplace changes who is capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting.
>
> The individual can perform simple tasks for two hour blocks of time with normal rest breaks during an eight hour work day, who has no interaction with the public and only occasional interaction with coworkers.

Tr. 57–58.  The ALJ asked if an individual with these limitations could perform  the claimant's past work as he performed it or as customarily performed, and the VE testified such an individual could not perform any of Plaintiff's past relevant work. Tr. 58.  However, the VE identified the following light exertional jobs for the hypothetical individual: router, DOT code 222.587-038, SVP 2, with approximately 53,000 positions in the national economy; marker, DOT code 209.587-

034, SVP 2, with approximately 300,000 positions in the national economy; and, laboratory sample carrier, DOT code 922.687-054, SVP 2, with approximately 12,000 positions in the national economy. Tr. 58–59.

In his second hypothetical, the ALJ added the additional limitation of frequent balancing with a handheld assistive device that would be used to ambulate to the workstation but would not be needed at the workstation. Tr. 59. The VE replied that these limitations would reduce the previously identified light positions by approximately 75%. *Id.* The ALJ asked if there were any other jobs the hypothetical individual could perform, and the VE testified, "at light that would be rather limiting, however, at sedentary there would be jobs." *Id*. The VE identified the following jobs in response to the second hypothetical: router position, 13,250 positions in the national economy; marker, 75,000 positions in the national economy, and laboratory sample carrier, 3,000 positions in the national economy. Tr. 60.

In his third hypothetical the ALJ added the additional limitation of being off task 20 percent or more of the workday and absent from work three days or more per month. *Id.* The VE testified there would be no available work for an individual with such a limitation. *Id*. The ALJ asked whether there was any conflict between the DOT requirements and the hypothetical limitations, and the VE replied:

> Your Honor, there are no direct conflicts, however, I should note that the DOT does not address time off task, absenteeism, using a handheld assistive device. The reduction, that was based upon my experience. Also the frequency of interactions with others, two hour increments, eight hour work day with persistence and pace, simple tasks, simple work related decisions, frequency of changes, pace work. It also does not address bright flashing lights, moving machinery, nor work performed at height and furthermore it also does not differentiate the climbing ladders, ropes, stairs, scaffolds or ramps. My testimony regarding those factors is based upon my experience in job placement, job analysis and my education.

Tr. 60–61. Claimant's counsel asked the VE to clarify her response to hypothetical three, and the VE replied that whether the hypothetical individual was off task 20% of the time or absent 3 or more times a month, either or both would exclude employment. Tr. 61. Counsel then asked the VE to take hypothetical one and add to it no contact with co-workers and the inability to tolerate any criticism from the supervisor, and the VE testified those limitations would be preclusive of work. Tr. 61–62.

II.     Discussion

A.     The Commissioner's Findings

In his November 20, 2018 decision, the ALJ made the following findings of fact and conclusions of law:

1.     The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

2.     The claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 5, 2018 through his date last insured of December 31, 2018 (20 CFR 404.1571 et seq.).

3.     Through the date last insured, the claimant had the following severe impairments: Headaches/Migraines, Obesity, Depression and Post-Traumatic Stress Disorder (20 CFR 404.1520(c)).

4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)

5.     After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, crouch, kneel, or crawl; no use of moving machinery, or exposure to unprotected heights; limited to occupations which do not involve working beneath bright, flashing lights (does not include normal exposure to neon lights in a working environment); work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; and with few,

if any, work place changes; capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting; the individual can perform simple tasks for two-hour blocks of time with normal rest breaks during an eight hour work day; with no interaction with the public, and only occasional interaction with coworkers.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on February 18, 1976 and was 42 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from July 5, 2018, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g)).

Tr. 17–27.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather,

the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C. Analysis

Plaintiff alleges the ALJ erred in failing to find Plaintiff met Listing 12.15 and failing to properly account for his mental impairments in the RFC. ECF No. 10 at 2. Plaintiff also contends the ALJ's decision is not supported by the longitudinal record. *Id.* The Commissioner contends substantial evidence supports the ALJ's findings. ECF No. 11.

1. Severity of Impairments

Plaintiff argues the ALJ erred in failing to find his chronic knee pain due to bilateral meniscal tears was a severe impairment. ECF No. 10 at 14. The Commissioner argues Plaintiff's chronic knee pain was not severe, and the ALJ considered this impairment in determining the RFC. ECF No. 11 at 16–19.

A finding of a single severe impairment at step two of the sequential evaluation process is enough to ensure that the factfinder will progress to step three. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Therefore, this court has found no reversible error where the ALJ does not find an impairment severe at step two provided that he considers that impairment in subsequent steps. *See Washington v. Astrue*, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (collecting cases); *Singleton v. Astrue*, No. 9:08-1982-CMC, 2009 WL 1942191, at *3 (D.S.C. July 2, 2009).

The ALJ found Plaintiff's severe impairments included Headaches/Migraines, Obesity, Depression and Post-Traumatic Stress Disorder. Tr. 17. He specified that osteoarthritis involving knees, back, right shoulder and left ankle, mild lumbar degenerative disc disease, mild degenerative changes in right AC joint, and mild left calcaneal spurring were non-severe impairments, explaining that these impairments were treated conservatively, and the record was void of any work-related limitation of function attributable to these impairments. *Id.* The ALJ adequately assessed Plaintiff's severe and non-severe impairments and  provided a rational explanation for his conclusions as to which impairments were severe and which were not. Tr. 17–18. The ALJ also considered all of Plaintiff's impairments and imposed restrictions based upon their individual and cumulative effects of the impairments. *See* Tr. 17–27. This allegation of error is dismissed.

2.  Listing 12.15

Plaintiff contends the ALJ failed to properly evaluate whether he met Listing 12.15. ECF No. 10 at 6–10.  The Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff's PTSD did not meet listing level severity. ECF No. 11 at 10–16.

The regulations provide that the burden of establishing disability under the Listings is on the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512, 416.912; *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "Under Step 3, the regulation states that a claimant will be found disabled if he or she has an impairment that '[1] meets or equals one of our listings in appendix 1 of this subpart and [2] meets the duration requirement.'" *Radford v. Colvin*, 734 F.3d 288, 293 (4th Cir. 2013) (citing 20 C.F.R. § 404.1520(a)(4)(iii)) (emphasis in original). It is not enough that the claimant has the diagnosis of a listed impairment; the claimant must also evidence the requirements for the listing of that impairment. 20 C.F.R. § 404.1525(d). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. at 530.

It is, generally, the responsibility of the ALJ to decide the legal question of whether a listing is met by a claimant's impairments. *See* SSR 96-6p. A claimant must establish that there was a "twelve-month period . . . during which all of the criteria in the Listing of Impairments [were] met." *DeLorme v. Sullivan*, 924 F.2d 841, 847 (9th Cir. 1991). While each symptom does not have to be present simultaneously, the claimant must show that each of the symptoms are present and claimant has suffered or can be expected to suffer from them continuously for at least 12 months. *Radford v. Colvin*, 734 F.3d at 294.

At step three, to determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app.

1, the ALJ must identify the relevant listed impairments and then compare the listing criteria with evidence of claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168 (4th Cir.1986). In *Cook*, the court held that the ALJ should "have compared each of the listed criteria to the evidence of [the claimant's] symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id.* at 1173.

Plaintiff contends his medical documentation establishes that his mental health conditions meets or equals Listing 12.15. ECF No. 10 at 6–10. Listing 12.15 requires:

> Listing 12.15 Trauma- and stressor-related disorders, satisfied by a claimant meeting A and B, or A and C;

> A. Medical documentation of all of the following:
> 1. Exposure to actual or threatened death, serious injury, or violence;
> 2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
> 3. Avoidance of external reminders of the event;
> 4. Disturbance in mood and behavior; and
> 5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

OR

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.15.

At Step Three the ALJ discussed the "Paragraph B" and "Paragraph C" criteria. Tr. 18.[2] In finding Plaintiff did not meet the "Paragraph B" criteria, the ALJ determined Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, adapting and managing oneself, and concentration, persistence, and pace. Tr. 19–20. Plaintiff argues the ALJ's analysis of the Paragraph B criteria included misrepresentations of Plaintiff's limitations because the ALJ utilized references that did not reflect Plaintiff's longitudinal record. ECF No. 10 at 6.

The ALJ found Plaintiff had a moderate limitation in understanding, remembering, or applying information. Tr. 19. The ALJ noted Plaintiff's ADLs included performing simple maintenance, preparing meals, paying bills, going to doctor's appointments, taking medications, shopping, and driving. *Id*. The ALJ also noted there was little mention in Plaintiff's records about issues with his memory, and the records showed Plaintiff was able to describe his work history and answer questions from his medical provider, follow their instructions, and provide information on his health. *Id.* The ALJ also referenced Plaintiff working on a college degree. *Id.* Plaintiff argues the ALJ's findings solely relied on an unidentified third-party report and Plaintiff attending college classes. ECF No. 10 at 6. Plaintiff also cites to an April 13, 2013, medical record where he complains of worsening memory and his concerns about memory loss. *Id.*

---

[2] Plaintiff contends the ALJ failed to provide any analysis of the Paragraph A criteria for Listing 12.15. ECF No. 10 at 6. It appears the ALJ assumed 12.15A was met and therefore did not provide any analysis. Even if Plaintiff meets the Paragraph A criteria, he still needs to meet the Paragraph B or Paragraph criteria.

The ALJ determined Plaintiff had a moderate limitation in interacting with others Tr. 19. The ALJ acknowledged Plaintiff's reports of difficulties with crowds and getting along with others, but observed Plaintiff was able to shop, spend time with family, attend VA group activities, and was head of security at church, where he attended twice a week. *Id.* The ALJ also noted Plaintiff attended college classes in 2019, traveled with a friend to Tennessee, and is moving in with his girlfriend. *Id.* The ALJ referenced records where Plaintiff presented as irritable and frustrated but explained there were also instances in the record, as recent as March 2020, where Plaintiff was cooperative and pleasant and appeared comfortable during appointments. *Id.* Plaintiff argues his attendance at VA group meetings is not a social event, and he references an incident with another church member prior to his returning to church. ECF No. 10 at 6–7. Plaintiff also points out records of frequent irritation, dismissal from employment due to lack of anger management, and his difficulty interacting with medical providers and people in the community. *Id*. at 7.

The ALJ found moderate limitations in concentration, persistence, and pace. Tr. 19. The ALJ noted Plaintiff reported limitations in focusing, but observed Plaintiff also reported he was able to drive, prepare meals, watch TV, manage funds, handle his own medical care, attend church, and maintain a 3.0 GPA while taking his college courses. Tr. 19–20. Plaintiff argues evidence of ADLs and college attendance is insufficient to support a finding of only moderate limitation in concentration, persistence, and pace. ECF No. 10 at 7. Plaintiff argues records show he has difficulty concentrating because of headaches, has difficulty on the anniversary of military deaths, and has low self-esteem and lack of enjoyment. *Id.*

The ALJ determined Plaintiff had moderate limitations in adapting or managing oneself. Tr. 20. The ALJ noted Plaintiff's report of difficulties managing his mood. *Id.* The ALJ indicated

Plaintiff also reported he was able to recognize when he was becoming irritable or angry and avoid interacting with others to prevent conflict. *Id.* The ALJ noted Plaintiff was able to handle self-care, personal hygiene, and care for his elderly relatives. *Id.* The ALJ referenced Plaintiff taking college courses and maintaining a 3.0 GPA. *Id.* The ALJ also noted Plaintiff exhibited appropriate grooming and hygiene. *Id.* Plaintiff argues the ALJ erred in not finding a greater limitation in adapting and managing oneself. ECF No. 10 at 8. Plaintiff contends the ALJ's acknowledgment of his mood instability and use of isolation to self-manage shows he struggles to manage himself. *Id.*

There is substantial evidence to support the ALJ's finding of moderate limitations in understanding, remembering, or applying information; interacting with others; adapting and managing oneself; and concentration, persistence, and pace. The ALJ made detailed findings in his decision concerning Plaintiff's mental impairments and there is substantial evidence to support the ALJ's findings concerning Plaintiff's exams, activities of daily living, Plaintiff's completion of college courses, his care for his elderly relatives, his interactions with others and other social history. *See* Tr. 76–83, 113, 118, 369–431, 632–989.

The ALJ also determined the evidence failed to establish the presence of the Paragraph C criteria. Tr. 20. The ALJ found "the record is void of claimant requiring a highly structured environment or dependence on others for activities of daily living." *Id.*

As set forth above, Paragraph C requires:

Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see

12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.15C.  More specifically, Paragraph C provides:

2. Paragraph C criteria.
a. We find a mental disorder to be "serious and persistent" when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that your disorder satisfies both C1 and C2.

b. The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D). We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition. We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder. If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by this paragraph.

c. The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 Listing 12.00(G)(2).

Plaintiff contends the ALJ provided limited analysis of the Paragraph C criteria.  ECF No.

10 at 8. Plaintiff argues Paragraph 12.15(C)(1) does not find "the highly structured environment"

is the only treatment option,[3] and Paragraph 12.15(C)(2) does not require dependence on others for completion of ADLs. *Id.* Plaintiff also cites to argument in Claimant's brief on 12.15(C) criteria and marginal adjustment:

> [Plaintiff] expressed a very fixed belief that his PTSD will never get better and that it will only get worse over time" [2F 118, 3/31/15]. "Veteran has not been able to recover from the traumatic event(s) they experienced, as evidenced by intrusive thoughts, hypervigilance, increased symptoms around anniversary dates of traumas, social withdrawal" [5F 72, 3/22/19]." "He still struggles with frustration tolerance, and reports he got angry yesterday over a processing fee to have his grandmother's tombstone engraved. 'I still have bouts of PTSD, I still have my dreams. I still can't do fireworks.' He States, 'it kind of gets depressing on certain anniversaries.'" (See 2F at 39)

ECF No. 10 at 14.

A review of the record establishes there is substantial evidence to support the ALJ's finding that there was a lack of evidence to establish the Paragraph C criteria. Plaintiff is correct that Paragraph 12.15(C)(2) does not require dependence on others for completion of ADLs, however, the inability to function outside of the home without substantial psychosocial support is one way to prove marginal adjustment. Plaintiff has not directed the court to any evidence in the record that meets this part of the Listing. Plaintiff also fails to point to other evidence in the record that shows he has only achieved marginal adjustment. ECF No. 10 at 8–10. Plaintiff does not argue his beliefs about his PTSD and situational struggles with anger, tolerance, depression, anniversaries, and holidays necessitated a significant change in medication or other treatment. Nor has Plaintiff shown that his examples of marginal adjustment required him to be hospitalized. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff did not meet the Paragraph C criteria.

There is substantial evidence to support the ALJ's finding that Plaintiff did not have an

---

[3] The ALJ did not address the other elements in the first prong of Paragraph C—mental treatment, mental health therapy, or psychosocial supports—and the record contains evidence of mental treatment and mental health therapy.

impairment or combination of impairments that meets or medically equals Listing 12.15.

### 2. RFC

Plaintiff argues the ALJ's RFC that restricted Plaintiff to simple, routine tasks or unskilled work and no interaction with the public failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace. ECF No. 10 at 11. Plaintiff also claims the ALJ did not explain how the RFC accommodated the severe condition of headaches/migraines *Id.* at 13. The Commissioner contends substantial evidence supports the RFC finding. ECF No. 11 at 16–19.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1596. An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4). Social Security Ruling 96–8p requires the RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

At Step Three of his decision, the ALJ found Plaintiff's severe impairments included Headaches/Migraines, Obesity, Depression and Post-Traumatic Stress Disorder. Tr. 17. The ALJ

also considered whether Plaintiff's mental impairments met or medically equaled Listing 12.15. Tr. 18–20. The ALJ specifically noted his RFC assessment reflected the degree of limitation he found in the Paragraph B mental functional analysis. Tr. 20. The ALJ also noted he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and also considered "medical opinion(s) and prior administrative medical finding(s)" in accordance with the regulations. Tr. 20–21. The ALJ found Plaintiff had the RFC to perform medium work with certain exertional and postural limitations. Tr. 20. The RFC limited Plaintiff as follows

> never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, crouch, kneel, or crawl; no use of moving machinery, or exposure to unprotected heights; limited to occupations which do not involve working beneath bright, flashing lights (does not include normal exposure to neon lights in a working environment); work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; and with few, if any, work place changes; capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting; the individual can perform simple tasks for two-hour blocks of time with normal rest breaks during an eight hour work day; with no interaction with the public, and only occasional interaction with coworkers.

Tr. 19–20.

Plaintiff argues an RFC that limits a claimant to simple, routine tasks, or unskilled work and no interaction with the public does not account for a claimant's time off task or limitations in concentration, persistence, and pace. ECF No. 10 at 11–12.[4] Plaintiff also argues the evidence

---

[4] Plaintiff cites to *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) in support of this argument. In *Mascio*, the Fourth Circuit found that an "ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio v. Colvin*, 780 F.3d at 638. However, in *Shinaberry v. Saul* the Fourth Circuit observed that *Mascio* "[does] not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." 952 F.3d 113, 121 (4th Cir. 2020). The court upheld the ALJ's RFC because "the ALJ's findings and the mental limitation included in the RFC are sufficiently explained and supported by substantial evidence in the record." *Id.* at 121–22.

showed his headaches would cause him to miss more than three days of work per month, and the VE testified this would preclude him from all jobs. *Id*. at 12–13.

As part of his RFC assessment, the ALJ summarized Plaintiff's medical records related to his physical and mental impairments. Tr. 20–24. The ALJ noted he considered Plaintiff's headache disorder in restricting Plaintiff to a range of light work with postural and environmental limitations. Tr. 21. The ALJ found Plaintiff's headache disorder to be severe, however he found the alleged degree of limitation and frequency of the headaches to not be supported by the record. *Id.* The ALJ referenced records where Plaintiff described his headaches as "come and goes," and stated most of the time he "do[es] good." *Id.* The ALJ also points to a January 2015 neurological exam where Plaintiff acknowledges his migraine headaches occur on an average once a month and did not result in "severe economic inadaptability." *Id*. The ALJ also noted that Plaintiff's neurological exams were consistently unremarkable and CT scans showed no abnormality. *Id.* The ALJ also referenced a June 2018 exam where Plaintiff did not complain of a current headache and renewed his headache management medication. *Id.* The ALJ acknowledged Plaintiff reported daily headaches in an October 2018 medical visit where he described migraine-style headaches occurring 2-3 times a month that "are not intractable." *Id*. The ALJ also cited to a December 2018 neurological exam finding that Plaintiff's current headache did not seem to be pure migraine headaches, but a "combination of muscle tension and migraine and likely developed analgesic rebound headaches due to consuming a lot of Ibuprofen." *Id.*

The ALJ also explained he considered Plaintiff's various mental health impairments severe and considered them in restricting Plaintiff to low-stress, unskilled work with no interaction with the public and only occasional interaction with co-workers. Tr. 22. The ALJ analyzed Plaintiff's mental health treatment records, the exam findings as to those impairments, and the treatment

received, and found Plaintiff's subjective reports regarding his limitations are not supported by the objective evidence of the record. *Id.* The ALJ noted Plaintiff was diagnosed with chronic PTSD in September 2007 and was stable on Prozac in December 2007 and released to full active duty where he remained until October 2012 when he was discharged after failing to achieve a promotion to a rank beyond E5. *Id.* The ALJ noted Plaintiff initiated mental health treatment in May 2013 after poor transition to civilian life, job loss, and a breakup, and his psychiatric records reflect he was diagnosed with PTSD and depression, with narcissistic and dependent personality traits, with treatment emphasizing interpersonal and relationship stressors. *Id.* The ALJ noted Plaintiff was engaged to another woman within two months after his break-up. *Id.* The ALJ referenced an April 2015 evaluation for service-connected disability for PTSD where it was noted that Plaintiff's profile suggested mild depression and "he did not endorse distress on measures of social discomfort, thinking and concentration problems, affective instability, or aggression and irritability." Tr. 22–23. The ALJ noted June 2018 records where Plaintiff reported he did not take psychotropic medication and had not participated in psychotherapy in over two years. Tr. 23. The ALJ acknowledged Plaintiff reported a worsening of PTSD in October 2018, but stated this report appears to coincide with Plaintiff's July 2018 application for VA Individual Unemployability and his frustration with the VA for requiring multiple exams. *Id.* The ALJ also noted a December 2018 exam where Plaintiff requested to be seen by VA Mental Health after reporting the recent initiation of Wellbutrin was beneficial. *Id.* The ALJ also referenced a January 2019 mental health record showing Plaintiff's mental status exam was unremarkable, behavior calm, cooperative, receptive to examination, affect full ranged, thought process linear and goal directed, and judgment, memory, and concentration intact and adequate. *Id.* The ALJ noted Plaintiff was seen in July 2019, and his mental status was normal, he was well groomed, exhibited appropriate behavior, speech

was normal rate and tone, mood and affect were unremarkable, thought processes were appropriate, and no observable cognitive deficits. *Id*. Plaintiff reported he was enrolled in college, involved in an Upstate Warriors Solution group, seeking more social relationships and activities, and singing a solo in a concert. *Id.* The ALJ noted health visits from August 2019 to March 2020 noted mild depressed mood, appropriate grooming, good hygiene, cooperative attitude/behavior, fully alert and oriented, thought processes logical and goal oriented, and good insight and judgment. *Id.* The ALJ noted generally benign findings on physical and mental status exams and routine and conservative treatment. Tr. 23–24. The ALJ considered Plaintiff's reported ADLs and found Plaintiff's statements concerning the limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24. The ALJ also considered the consultive examiner's opinions, and prior administrative findings, noting he could not defer or give these opinions or findings any specific evidentiary weight. Tr. 24–25.

The ALJ explained the record supports an RFC that limits Plaintiff to light work with postural, environmental, social, adaptation and complexity of task restrictions, with no additional limitations. Tr. 23. The ALJ provided an extensive narrative discussion, citing specific medical facts and non-medical evidence, to support the functional limitations found in his RFC. Tr. at 20–25. Considering the foregoing, the ALJ's RFC assessment is supported by substantial evidence.

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). The Commissioner's decision is affirmed.

IT IS SO ORDERED.

August 31, 2022                          Kaymani D. West
Florence, South Carolina                 United States Magistrate Judge